UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERRI A. V., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 19-CV-00525-CDL |
| | ) |
| KILOLO KIJAKAZI[1], | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the undersigned **affirms** the Commissioner's decision denying benefits.

**Procedural History**

Plaintiff filed an application for social security disability benefits on March 9, 2015. Plaintiff alleges she became disabled due to chronic neck and back pain and bulging discs in her back. Plaintiff was forty-two years old on the alleged onset date of February 1, 2015.

---

[1]   Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Prior to the onset date, Plaintiff worked as a retail cashier, and fast food restaurant cook, food preparer, and cashier. The Social Security Administration denied Plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on March 8, 2017. Testimony was given by Plaintiff and Vocational Expert (VE) Jennifer L. Sullivan. On June 28, 2017, the ALJ issued a decision denying disability benefits. (R. 120). On September 5, 2018, the Appeals Council vacated the unfavorable decision and remanded the claim. (R. 139). The ALJ held a second hearing on December 19, 2018. Testimony was given by Plaintiff and VE Christie Wilson. On January 17, 2019, the ALJ issued a decision denying disability benefits. (R. 899). The Appeals Council affirmed the decision on July 28, 2019, rendering the ALJ's January 17, 2019 decision the agency's final decision. (R. 893). Plaintiff timely filed an appeal in the district court. Accordingly, the Court has jurisdiction to review the ALJ's January 17, 2019 decision under 42 U.S.C. § 405(g).

## Standard of Review

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir.

2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

### Agency Proceedings

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined Plaintiff had not

engaged in substantial gainful activity since February 1, 2015. (R. 904). The ALJ's determination at step one is not challenged and is supported by substantial evidence.

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See id.* A claimant who does not have a severe impairment is not disabled. *See Williams*, 844 F.2d at 1084. Here, the ALJ determined that Plaintiff has following severe impairments: degenerative disc disease of the lumbar and cervical spine with radiculopathy, Carpal Tunnel Syndrome (CTS), degenerative joint disease right hip status post-surgical procedure, degenerative joint disease left shoulder/elbow, status post-left shoulder rotator cuff repair, and ulnar nerve release, obesity, anxiety, and depression. (R. 904). Thus, the ALJ properly proceeded to step three.

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is presumed to be disabled and is entitled to benefits. Otherwise, the ALJ proceeds to step four.

Here, the ALJ found at step three that Plaintiff's physical impairments do not meet or equal the criteria for any listing. The ALJ stated that he gave special consideration to Listing 1.02, Major disfunction of a joint, Listing 1.03, Reconstructive surgery of a major weight bearing joint, Listing 1.04, Disorders of the spine, and Listing 11.14, Neuropathy. (R. 905). The ALJ also factored obesity in the analysis of listings with Plaintiff's

impairments and found that Plaintiff's severe impairments in combination with obesity do not meet or equal a listing. *Id.* The ALJ additionally found that Plaintiff's mental impairments do not meet or medically equal any Listings. *Id.* In accordance with these findings, the ALJ proceeded to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. If the claimant can perform her previous work, she is not disabled.[2]

Here, the ALJ reviewed testimony of claimant, objective medical evidence in the record, and medical opinions from consultative examinations and from Plaintiff's treating physician, Bryan Ledbetter, D.O. The ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: The claimant can lift or carry up to ten pounds occasionally and less than ten pounds frequently. The claimant can stand or walk up to two hours in an eight-hour workday. The claimant can sit six hours in an eight-hour workday with normal breaks. The claimant cannot climb ladders, ropes or scaffolds. The claimant can stoop, balance, kneel, crouch, crawl, or climb ramps and stairs occasionally. The claimant can frequently finger and handle bilaterally. The claimant cannot perform bilateral overhead reaching. The claimant can understand, remember, and carry out simple and intermediate level instructions and perform tasks of simple and some intermediate level difficulty with routine supervision such that she is capable of doing simple or unskilled work. The claimant can relate to supervisors and

---

[2] Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023.

> coworkers on a superficial work-related basis. The claimant can adapt to a work situation.

(R. 906). The ALJ found the above RFC assessment is supported by the treatment records, diagnostic imaging, and the claimant's testimony. (R. 910). The ALJ found the RFC is justified as sedentary work with the above limitations and is consistent with the evidence and the claimant's combined impairments. *Id.*

The VE stated Plaintiff's past work as fast food worker was "light" and "unskilled." *Id.* Therefore, based on the VE's testimony as to a hypothetical person with Plaintiff's RFC, the ALJ found that Plaintiff would be unable to perform her past work. (R. 911). Accordingly, the ALJ proceeded to step five.

Once a claimant has satisfied her burden at steps one through four, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Lax*, 489 F.3d at 1084.

Here, after finding Plaintiff is unable to perform her past relevant work, the ALJ considered the relevant factors. Plaintiff is forty-two years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (citing 20 CRF 404.1563 and 416.963). *Id.* Plaintiff has at least a high school education and is able to communicate in English (citing 20 CFR 404.1564 and 416.964). *Id.* Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (citing 20 CFR 404.1568 and 416.968). *Id.* Plaintiff's ability to perform all or substantially all of the

requirements of this level of work has been impeded by additional limitations. The VE testified that there were jobs that exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (R. 912).

Based on these factors, the ALJ found based on Plaintiff's age, education, work experience and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.* Specifically, the ALJ identified three representative occupations that he determined Plaintiff can perform, citing the hearing testimony of the VE. *Id*.

> **Document Scanner**, "sedentary" unskilled work, with a Specific Vocational Preparation (SVP) of 2, Dictionary of Occupational Titles (DOT) Code # 249.587-018, with approximately 196,000 such jobs available within the national economy;
>
> **Clerical Mailer,** "sedentary" unskilled work, with a SVP of 2, DOT Code # 209.587-010, with approximately 32,000 such jobs available within the national economy;
>
> **Apprentice Circuit Board Screener,** "sedentary" unskilled work, with a SVP of 2, DOT Code # 726.684-110, with approximately 48,000 such jobs available within the national economy. *Id.*

Accordingly, the ALJ found at step five that Plaintiff has not been under disability from February 1, 2015, through the date of his decision. *Id.*

### Plaintiff's Arguments

Plaintiff argues that the ALJ's RFC determination is not based upon substantial evidence and the ALJ failed to present a complete hypothetical question to the VE.

Specifically, Plaintiff asserts the ALJ did not consider the absences from work Plaintiff required due to the numerous surgeries that occurred from May 5, 2015 through March 15, 2017 when assessing Plaintiff's RFC.[3] Plaintiff asserts that the ALJ failed to present a hypothetical question to the VE regarding a limitation due to her absenteeism.

Defendant argues that it was reasonable for the ALJ to not include a limitation regarding absenteeism in the RFC assessment or his hypothetical questions to the VE. Defendant argues that absenteeism due to having surgery for an impairment is not an ongoing limitation and should not be considered a functional limitation when determining Plaintiff's RFC.

### Analysis

Plaintiff's arguments focus on the singular issue of Plaintiff's absenteeism related to her past surgeries and whether the ALJ failed to consider that as a limitation in his RFC determination or in a hypothetical question to the VE. The Commissioner acknowledges that each surgery may have had a period of recovery that could cause absences from work. (Doc. 26, page 11). However, these individual conditions would not require a limitation to address absences due to surgery in the RFC, as absenteeism due to surgery would

---

[3] A closed period of disability should be considered if the evidence suggests that a claimant's impairments may have been disabling for a period of at least 12 months but a period which started and stopped before the ALJ's decision. *Gagnon v. Colvin*, 2015 WL 1268294, *4 (E.D. Okla) (unpublished). However, Plaintiff failed to raise this argument and therefore, it is considered waived. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument.") (internal citation and quotation omitted)).

typically only occur once per condition. *Id.* In this case, Plaintiff underweint nine surgeries from May 5, 2015 through March 15, 2017 for different conditions. Under agency regulations, "severe impairments lasting less than 12 months cannot be combined with successive, unrelated impairments to meet the duration requirement." *See SSR 82-52.* Although it is reasonable to expect that Plaintiff would have some recovery time after each surgery, the recovery periods cannot be combined to meet the duration requirement in SSR 82-52. *See id*.

The Commissioner has promulgated regulations regarding assessment of RFC. *See* C.F.R. § 404.1545-1546, 416.945-946. In assessing RFC, an ALJ is to consider a claimant's abilities to meet the demands of work despite her impairment(s). *Id.* at § 404.1545, 416.945. The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all the claimant's impairments, including impairments which are not "severe" as defined in the regulations. *Id.* at §§ 404.1545(a & e), 416.945(a & e).

Plaintiff contends the ALJ failed to include a limitation for absenteeism in his RFC assessment. An ALJ only need include limitations that are substantially supported by the medical record. *See Kirkpatrick v. Colvin,* 663 Fed. App'x 646, 650 (10th Cir. 2016). ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue,* 438 Fed. App'x 735, 740 (10th Cir. 2011). (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record"). While it is expected Plaintiff required some recovery time for each

of her surgeries, the record does not support a functional limitation for ongoing absenteeism.

### A. Medical Records

As outlined below, with the exception of the two surgical fusions on Plaintiff's neck, the remaining surgeries involved impairments that resolved after surgery.

### i. May 5, 2015 left carpal tunnel surgery

At the May 29, 2015 left carpal tunnel post-operative visit with Brent Nossaman, D.O., the medical record indicates that although Plaintiff reports experiencing moderate pain, she states "she is doing fine." (R. 532). (Exhibit 5F, page 3). The physical examination also revealed that Plaintiff "no longer experiences any numbness or tingling in the median nerve distribution" and "there is no evidence of swelling." *Id*. Dr. Nossaman continued to state that Plaintiff "is doing extremely well" and discharged her from his care. (R. 533). (Exhibit 5F, page 4).

### ii. June 15, 2015 C5-C6 neck surgery

At the July 7, 2015 post-operative visit with Casey Smith, M.D., Plaintiff reported "her neck and arm pain have significantly improved and [she] is pleased with the result of her surgery." (R. 705). (Exhibit 14F, page 1). The ALJ also noted that post-operative x-rays of Plaintiff's cervical spine showed the hardware was in good position and the graft appeared in good position without subsidence. (R. 908) (citing Exhibit 14F at 2)).

At the October 25, 2015 post-operative visit with Dr. Smith, the X-rays revealed Plaintiff had no evidence of hardware loosening and some evidence of bony fusion across

her disc space, although her fusion was still not completely solid. (R. 717). Plaintiff complained of pain in her left arm and shoulder, but "[s]he otherwise is doing well." *Id.*

However, at the 6 month post-operative visit on December 15, 2015 with Dr. Smith, Plaintiff reported continued neck pain, and her x-rays showed no clear evidence of fusion. (R. 720). Dr. Smith ordered a CT scan to evaluate for pseudoarthrosis, which could explain her ongoing neck pain. *Id.* At the January 6, 2016 follow up with Dr. Smith, Plaintiff continued to complain of persistent neck pain, and her CT showed evidence of pseudarthrosis. (R. 724). Dr. Smith recommended a posterior cervical instrumented decompression and fusion with keyhole foraminotomy. *Id.*

### iii. September 24, 2015 right carpal tunnel & right ulnar nerve transposition surgery

At the October 19, 2015 post-operative visit with Dr. Nossaman, he noted that Plaintiff "is doing well in both areas." (R. 714). He noted that Plaintiff "has marked improvement in light touch and sensibility in the median and ulnar nerve distributions of the right hand" and "[c]irculation is intact to the right upper extremity." *Id.* He noted that Plaintiff has some soreness in the palm of the hand, but that was expected as she had been doing a lot of gripping and twisting with her hand and that places a lot of effort in the palm that is sore and tender following the surgery. *Id.* He noted that Plaintiff had a previous left carpal tunnel surgery but was still having trouble with her left upper extremity. (R. 715). Dr. Nossaman noted that review of Plaintiff's EMG/NCV study did not have any significant changes on the nerve test, but clinically she had some significant trouble with the ring and small finger with cubital tunnel syndrome. *Id.* Dr. Nossaman noted Plaintiff

11

wished to proceed with left ulnar nerve transposition surgery to correct this, as she "has done great" with the same surgery previously on the right side. *Id.*

      **iv.    October 23, 2015 partial hysterectomy**

The only records from this surgery are the records on the day of the surgery. In the October 23, 2015 post-surgery consultation report of John R. Thompson, M.D., he noted that Plaintiff is "doing ok", her pain is "rated about 6/10 to 7/10", she was able to finish her dinner, she "states she is doing okay overall" and she denied any fever or chills and any nausea or vomiting. (R. 581).

      **v.    November 19, 2015 left ulnar nerve transposition surgery**

The November post-operative report by Dr. Nossaman reported Plaintiff "tolerated the procedure well without any complication and was transferred to recovery in stable condition." (R. 597).

      **vi.    February 8, 2016 C5-C6 neck surgery & February 16, 2016 neck surgery infection surgery**

Plaintiff initially tolerated the surgery well, but developed a fluid collection in the posterior cervical spine and was brought back to surgery on February 16, 2016 due to concerns for infection. (R. 678). At the two week post-operative visit on March 2, 2016, Dr. Smith noted Plaintiff had developed a blood clot and was placed on Coumadin and Bactrim DS by her primary care doctor. (R. 741). Despite her complicated recovery course due to the infection and blood clot, Plaintiff reported "she is doing much better after her second surgery and denies systemic symptoms." *Id.* Dr. Smith notes that Plaintiff "is doing well today and has had near complete resolution of her left arm pain." (R. 742). At

the April 6, 2016 follow-up visit with Dr. Smith, Plaintiff "reports continued improvement and no further complications." (R. 744). Plaintiff reported she had an injury which resulted in some neck pain after helping her mother-in-law up off the ground after falling from her wheelchair. *Id.* Plaintiff stressed she "has been very compliant with her 10 pound restrictions other than this incident." *Id.* It is worth noting that this appointment is less than ten months after Plaintiff's initial neck surgery on June 15, 2015 and Dr. Smith reported that Plaintiff "has had good resolution of her neck and shoulder pain," "she continues to do quite well," and "she continues to wean off of her pain medication and Valium and [r]efills were given today in a tapered fashion." (R. 746).

### vii. September 12, 2016 left shoulder rotator cuff surgery

At the September 23, 2016 post-operative visit, James D. Cash, M.D. noted that the left shoulder exam "shows incisions look good and she has good hand wrist and elbow motion." (R. 758). Dr. Cash started Plaintiff on decompression protocol and instructed her to return in three weeks to check her progress. (R. 759).

### viii. March 15, 2017 right hip surgery

The ALJ noted that since Plaintiff's hip surgery, her MRI's have been largely mild and show no residual signs of surgery. (R. 909). Specifically, an MRI of Plaintiff's right hip on November 21, 2018 showed only mildly arthritic changes. *Id.* (citing Exhibit 29F, page 1). The report also notes the muscles and tendons of the pelvis and of both hips show no atrophy, edema, mass, tears, or other abnormalities of soft tissues. (R. 882).

### ix. Post surgeries

Since her last surgery, Plaintiff primarily sought treatment for low back pain, hip pain, anxiety, and depression. On July 24, 2017, Dr. Ledbetter referred Plaintiff for an MRI for her ongoing back and right leg pain. (R. 809). The ALJ noted that the August 23, 2017 MRI showed degenerative disc disease at L5-S1 without significant spinal or neuroforaminal stenosis. (R. 909) (citing Exhibit 23F, page 1). Although the MRI findings showed only mild stenosis, Plaintiff continued to seek treatment for back and hip pain, and anxiety and depression. The record from the September 5, 2017 visit with Dr. Ledbetter states Plaintiff "does not desire pain management but would prefer to see a Surgeon." (R. 852). Dr. Ledbetter referred Plaintiff to Dr. Malone. *Id.* Plaintiff returned to Dr. Ledbetter on September 27, 2017 for back pain and requested pain medication. (R. 854). Dr. Ledbetter renewed her prescription for Norco and stated they "will continue to work to find a back surgeon but so far we have not found one that will accept her as a patient." (R. 855).

Plaintiff sought treatment for back pain on October 17, 2017, November 7, 2017, December 11, 2017, and April 5, 2018 for which she was prescribed pain medication by Dr. Ledbetter. (R. 856-867). There are no records again until November 6, 2018, where Plaintiff sought treatment for back and hip pain and requested more pain medication and another MRI. (R. 889-890). The ALJ notes that Plaintiff underwent a subsequent lumbar MRI on November 21, 2018 that once again showed degenerative disc disease at L5-S1 without significant spinal or neuroforaminal stenosis. (R. 909) (citing Exhibit 29F, page 3).

In sum, the medical records and diagnostic testing show Plaintiff's surgeries were largely successful and her subsequent symptoms are generally mild and are being treated with medications. Therefore, there is nothing in the medical record that supports a functional limitation for chronic absenteeism in the RFC assessment.

Plaintiff also suggests that the ALJ erred by failing to include any manipulative limitations in the RFC. (Doc. 18 at 8-9). However, Plaintiff fails to cite any case law for this argument. Furthermore, Plaintiff fails to point to any specific evidence in the record indicating that her carpal tunnel syndrome resulted in functional limitations or to any specific error by the ALJ in considering the evidence as to her manipulative abilities. The Court finds, therefore, that Plaintiff has waived this issue.

Plaintiff asserts that the ALJ erred in failing to present a hypothetical question to the VE about limitations due to absenteeism. Hypothetical questions should reflect all of Plaintiff's impairments, *see Hargis,* 945 f.2d at 1492, but they need only reflect impairments and limitations that are borne out by the evidentiary record. *Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995). As stated above, there is no evidence in the record that Plaintiff will have a functional limitation of chronic absenteeism in the future. Thus, it is unnecessary to present a hypothetical question regarding absenteeism as a functional limit to be considered by the VE.

The Court finds the ALJ's RFC analysis is supported by substantial evidence, reflected in objective medical testing and subjective statements by Plaintiff indicating that her symptoms improved after her surgeries. Further, the Court finds that absenteeism resulting from Plaintiff's surgeries did not warrant further limitation of the RFC, because

Plaintiff has pointed to no substantial evidence that absenteeism due to any of her individual impairments would last for a period of 12 months or longer. *Cf.* SSR 82-52.

### Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the ALJ's decision finding Plaintiff not disabled is **affirmed**.

ORDERED this 23rd day of August, 2021.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge